UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC B. BARNETT, *et al.*, | : | Case No. 1:14-cv-908 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| E-WASTE SYSTEMS, INC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER:
(1) GRANTING PLAINTIFFS' MOTION FOR COLLECTIVE
ACTION CERTIFICATION (Doc. 14); AND
(2) GRANTING PLAINTIFFS' MOTIONS FOR
DEFAULT JUDGMENT (Docs. 26, 32)**

This civil action is before the Court on Plaintiffs' motion for collective action certification (Doc. 14) and Plaintiffs' motions for default judgment. (Docs. 26, 32). Defendants did not file a responsive memorandum.

**I.     PROCEDURAL HISTORY**

Plaintiffs Eric B. Barnett and Keith D. Heard filed a putative collective action against Defendants E-Waste Systems, Inc. ("EWS") and E-Waste Systems Cincinnati, Inc. ("EWS-Cincinnati") on November 25, 2014. (Doc. 1). Plaintiffs alleged that Defendants failed to pay them any wages for four weeks in violation of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§ 4111, *et seq.*, ("the Ohio Wage Act"), the Ohio Constitution, Ohio Const. Art. II, § 34a, and the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15. (*Id.*)  Plaintiffs asserted

their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b), while the state law claims were asserted individually.  (*Id.* at 1).

Plaintiffs were employed by Defendant EWS-Cincinnati at its Springdale, Ohio location.  (Doc. 1 at ¶ 11).  Defendant EWS-Cincinnati is a wholly-owned subsidiary of Defendant EWS and seek to proceed against both Defendants as joint employers.  (*Id.* at ¶¶ 10, 17).  Defendants last paid Plaintiffs on October 22, 2014, for the pay period of October 3 to October 16, 2014.  (*Id.* at ¶ 13).  Plaintiffs continued to work until November 18, 2014, when Defendants laid off Plaintiffs and the other employees at Springdale location.  (*Id.* at ¶ 15).  Plaintiffs have not received any payment for hours worked between October 17 and November 18, 2014.  (*Id.* at ¶ 16).  In their complaint, Plaintiffs Barnett and Heard indicated that they sought to bring their FLSA claims as a collective action on behalf of all similarly situated employees.  (*Id.* at ¶ 22).  Specifically, Plaintiffs sought to certify a collective action encompassing all individuals who performed work for Defendant EWS-Cincinnati from October 17 to November 18, 2014 and were not compensated for all hours worked.  (*Id.*)

Plaintiffs served Defendant EWS on December 6, 2014.  (Doc. 7).  Defendant EWS failed to moved, answer, or otherwise plead in response to Plaintiff's complaint. On January 15, 2015, Plaintiffs filed an application for entry of Clerk's default, which the Clerk entered the same day.  (Docs. 17, 19).  Plaintiffs served Defendant EWS-Cincinnati on January 15, 2015.  (Doc. 22).  Defendant EWS-Cincinnati also failed to move, answer, or otherwise plead in response to Plaintiff's complaint.  On February 11, 2015, Plaintiffs filed an application for Clerk's entry of default, which was entered the next day.  (Docs.

2

30, 31). Plaintiffs filed a motion for default judgment against Defendant EWS on February 5, 2015, and a motion for default judgment against Defendant EWS-Cincinnati on February 13, 2015. (Docs. 26, 32).

On January 7, 2015, Plaintiffs filed a pre-discovery motion for conditional certification as a FLSA collective action pursuant to 29 U.S.C. § 216(b) and for Court-supervised notice to potential opt-in Plaintiffs. (Doc. 14). Prior to filing for conditional certification, six persons filed a notice of consent to join the collective action as opt-in Plaintiffs.[1] Subsequently, another six persons filed notice to join as opt-in Plaintiffs.[2] Accordingly, there are now twelve opt-in Plaintiffs in addition to the two named Plaintiffs. Plaintiffs' counsel have certified that all potential opt-in Plaintiffs have already joined this action. (Doc. 26, Ex. P at ¶ 5; Doc. 27 at ¶ 5).

## II. COLLECTIVE ACTION CERTIFICATION

The Court first addresses Plaintiffs motion for certification as a collection action. Plaintiffs seeking to file a collective action under the FLSA must demonstrate that they are "similarly situated." 29 U.S.C. § 216(b). This is a less stringent standard than the criteria for class certification under Rule 23. *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009). FLSA collective action certification typically occurs in two stages: conditional and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671-72 (6th Cir. 2012). Conditional certification requires that plaintiffs "only

---

[1] In chronological orders, they are Plaintiffs John Vogel, Stephen L. Evans, Marquice Simmons, James Mikel Ellis, Craig Smith, and Terry Thacker. (Docs. 2, 5, 6, 8, 9, 10).

[2] Plaintiffs John Bussard, Kevin Williams, David Morales Perez, Bill Beal, Jose R. Medina, Angel Manuel, and Mendez Fret. (Docs. 15, 20, 21, 23, 24, 25).

make a modest showing that they are similarly situated to the proposed class of employees." *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011). This inquiry focuses on whether the plaintiff has made a sufficient initial showing to justify providing notice to other employees. *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006). Here, Plaintiffs' counsel have certified that all potential opt-in Plaintiffs have already joined this action and that notice is no longer necessary. (Doc. 26, Ex. P at ¶ 5; Doc. 27 at ¶ 5). Accordingly, the Court finds that the conditional certification inquiry is moot and will proceed to final certification.

Final certification typically occurs near the end of discovery and warrants "a stricter standard" than conditional certification. *Comer*, 454 F.3d at 547. Here, Defendants' failure to appear renders this an impossibility. Plaintiffs generally must produce "more than just allegations and affidavits" demonstrating similarity in order to achieve final certification. *Frye*, 495 F. App'x at 672. However, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Here, the twelve opt-in Plaintiffs allege substantially identical FLSA violation as the two named Plaintiffs. Specifically, all fourteen Plaintiffs allege that they were not paid any wages for work performed between October 17 and November 18, 2014. The only distinctions appear to involve the number of hours worked and the hourly wages. Defendants' failure to defend precludes Plaintiffs and the Court from performing any further inquiry. Accordingly, the Court finds that the

4

Plaintiffs are "similarly situated" such that certifying a collective action under 29 U.S.C. § 216(b) is appropriate.

The Court notes that Plaintiffs' complaint indicated that the state law claims were asserted individually and that Plaintiffs only sought certification as a collective action pursuant to the FLSA. Plaintiffs did not seek class certification under Rule 23 for their state law claims, which have not been individually asserted by the twelve opt-in Plaintiffs. The FLSA does not expressly provide that opt-in Plaintiffs may join in non-FLSA claims. Plaintiffs' motions for default judgment merely assume that the twelve opt-in Plaintiffs may also pursue the state law claims that were individually asserted by the two named Plaintiffs. The Court of Appeals has held that "an opt-in employee with FLSA and supplemental claims can have both of those claims certified as part of a collective action where a lead plaintiff has FLSA and supplemental claims." *O'Brien*, 575 F.3d at 580. Notwithstanding Plaintiffs' failure to cite this principle, the Court concludes that it is appropriate to certify the opt-in Plaintiffs as part of a collective action asserting the six claims alleged in the complaint.

### III. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-298, 2010 U.S. Dist.

5

LEXIS 86241, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

While liability may be shown by well-pleaded allegations, the Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 U.S. Dist. LEXIS 62027, at *5 (E.D. Mich. June 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.*, No. 2:07-cv-990, 2010 U.S. Dist. LEXIS 36756, at *1 (S.D. Ohio Mar. 12, 2010).

## IV. ANALYSIS

Defendants having defaulted, the factual allegations in the complaint, except those related to the amount of damages, are deemed true. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). To ascertain an uncertain sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12cv962, 2012 U.S. Dist. LEXIS 116166, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.*, No. 2:06-cv-487, 2007 U.S. Dist. LEXIS 3118, at *2 (S.D. Ohio Jan. 16, 2007). Here, the Court finds that an evidentiary hearing is unnecessary.

Plaintiffs assert violations of the minimum wage and overtime provisions of the FLSA and Ohio law.  The FLSA requires covered employers to pay its employees a minimum wage of $7.25 per hour and overtime compensation for hours of work exceeding 40 in a workweek at a rate of one and one-half times an employee's regular rate of pay.  29 U.S.C. §§ 206(a), 207(a)(1).  Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions.  Ohio Const. Art. II, § 34a; Ohio Rev. Code §§ 4111.02-.03.  Accordingly, the claims may be analyzed together.  *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007).

A covered employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Under Department of Labor regulations, an employee may be jointly employed by two entities, each of which is responsible for complying with the FLSA.  29 C.F.R. § 791.2; *Skills Dev. Servs., Inc. v. Donovan*, 728 F.2d 294, 301 (6th Cir. 1984).  The Court of Appeals has established "four factors in determining whether two companies are joint employers: the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."  *Keeton v. Time Warner Cable, Inc.*, No. 2:09-cv-1085, 2011 WL 2618926, at *3 (S.D. Ohio July 1, 2011) (citing *Int'l Longshoremen's Ass'n, AFL–CIO v. Norfolk Southern Co.*, 927 F.2d 900, 902 (6th Cir. 1991)).  Plaintiffs allege that Defendants are joint employers because EWS-Cincinnati is a wholly-owned subsidiary of EWS. (Doc. 1 at ¶ 10, Ex. B).  This could potentially encompass each of the four factors, but Plaintiffs provide no further elaboration as to why

Defendants were joint employers. The Court is loath to reach the legal conclusion that Defendants are joint employers, which imposes joint and several liability, based on the bare fact that Defendant EWS-Cincinnati is a wholly-owned subsidiary of EWS. Although this argument might not survive a reasoned opposition, Defendants defaults have precluded Plaintiffs from obtaining evidentiary support for this contention. Accordingly, the Court concludes that Defendants EWS and EWS-Cincinnati were joint employers.

Each of the fourteen Plaintiffs declares that he was not paid any wages for hours worked between October 17 and November 18, 2014. Ten Plaintiffs worked forty hours per week for four weeks,[3] and four Plaintiffs worked forty hours per week for three weeks.[4] Accordingly, each Plaintiff has established that Defendants violated the minimum wage provisions of the FLSA and Ohio law. 29 U.S.C. § 206(a); Ohio Const. Art. II, § 34a; Ohio Rev. Code § 4111.02.

Plaintiffs Barnett, Bussard, Heard, and Medina each worked eleven overtime hours during the week of November 3-8, 2014, for which they also did not receive any compensation. (Doc. 26, Ex. A at ¶ 8, Ex. C at ¶ 8, Ex. F at ¶ 8, Ex. G at ¶ 8). Accordingly, these four Plaintiffs have established that Defendants violated the overtime

---

[3] Plaintiffs Barnett, Beal, Bussard, Ellis, Evans, Heard, Medina, Mendez, Moral Perez, and Smith worked four weeks. (Doc. 26, Ex. A at ¶ 7, Ex. B at ¶ 7, Ex. C at ¶ 7, Ex. D at ¶ 7, Ex. E at ¶ 7, Ex. F at ¶ 7, Ex. G at ¶ 7, Ex. H at ¶ 7, Ex. I at ¶ 7, Ex. K at ¶ 7).

[4] Plaintiffs Simmons, Thacker, Vogel, and Williams worked three weeks. (*Id.*, Ex. J at ¶ 7, Ex. L at ¶ 7, Ex. M at ¶ 7, and Ex. N at ¶ 7).

8

provisions of the FLSA and the Ohio law. 29 U.S.C. § 207(a)(1); Ohio Rev. Code §§ 4111.03(A), 4111.10(A).

Although the FLSA and the Ohio law use the same standards to determine liability, the laws provide different measures of damages. Employers who violate the minimum wage and overtime compensation provisions of the FLSA are liable for back pay, plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). If the Court finds that the employer acted in good faith, it may choose to deny an award of liquidated damages. 29 U.S.C. § 260. Under the minimum wage provisions of the Ohio Constitution, an employer is liable for "an additional two times the amount of the back wages." Ohio Const., Art. II, § 34a. There is no good faith exception under Ohio law. Ohio law permits the recovery of unpaid overtime wages, but does not provide for liquidated damages. Ohio Rev. Code § 4111.10(A). Both the FLSA and the Ohio Constitution allow a prevailing plaintiff to recover reasonable attorney's fees and costs. 29 U.S.C. § 216(b); Ohio Const., Art. II, § 34a. Finally, the minimum wage under the FLSA is $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), while Ohio law imposed a minimum wage of $7.95 per hour in 2014.[5]

Plaintiffs seek damages for their minimum wage claims under Ohio law, which sets a higher minimum hourly rate and permits recovery of liquidated damages equal to twice the amount of unpaid wages. Ohio Const., Art. II, § 34a. Plaintiffs seek to recover damages calculated at the minimum wage rate of $7.95, not their actual hourly rate.

---

[5] Article II, Section 34a of the Ohio Constitution provides that the minimum wage is adjusted annually according to the consumer price index. *See* Ohio Department of Commerce, 2014 Minimum Wage, http://www.com.ohio.gov/documents/dico_2014minimumwageposter.pdf.

9

Accordingly, the ten Plaintiffs who worked four weeks of forty hours are each entitled to $3,816.00 in damages. The four Plaintiffs who worked three weeks of forty hours are entitled to $2,862.00 in damages.

Plaintiffs Barnett, Bussard, Heard, and Medina are also entitled to damages for their eleven hours of overtime work. These Plaintiffs seek to recover damages under the FLSA at the minimum overtime rate of $10.88 per hour, which amounts to $119.68 of unpaid overtime wages. There is no evidence before the Court suggesting that Defendants are entitled to the good faith defense in 29 U.S.C. § 260. Accordingly, Plaintiffs Barnett, Bussard, Heard, and Medina are entitled to $119.68 in unpaid overtime wages and an additional $119.68 in liquidated damages, for a total FLSA overtime damages award of $239.36. 29 U.S.C. § 216(b).

Plaintiffs also asserted violations of the Ohio Prompt Pay Act, which provides:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest[,] court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

Ohio Rev. Code § 4113.15(B). The same evidence establishes Defendants' liability under the Prompt Pay Act. Plaintiffs seek to recover liquidated damages in the amount of 6%

10

of their unpaid wages calculated at the hourly rate of $7.95.[6] Plaintiffs Barnett, Bussard, Heard, and Medina do not seek to include their unpaid overtime hours as part of their liquidated damages award. Accordingly, the ten Plaintiffs who worked four 40 hour weeks are entitled to $76.32 in liquidated damages, while the other four Plaintiffs are entitled to $57.24.

Finally, Plaintiff Bussard seeks an additional $700 in damages for dental bills. Plaintiff Bussard had been enrolled in dental insurance and premiums were deducted from his paychecks. (Doc. 26, Ex. C at ¶ 15). Plaintiff Bussard received dental work on October 21, 2014 and confirmed that his coverage was active on that date. (*Id.*, Ex. C, Attachment 2). After his termination on November 18, Plaintiff Bussard received additional dental work on November 28 and December 17, 2014 and assumed that his coverage remained active. (*Id.* at ¶ 17). However, Plaintiff Bussard later learned that his coverage had ended because Defendants failed to make the premiums payments in October and November. (*Id.* at ¶ 19). Plaintiff Bussard now seeks to recover $700 for those dental bills, which represents the amount of coverage that remained under his insurance policy.

Plaintiff Bussard has not identified a legal basis to hold Defendants liable for this amount. The FLSA and Ohio law permit recovery of unpaid wages and liquidated damages, but Plaintiff Bussard has not directed the Court to a provision authorizing the recovery of consequential damages such as dental bills caused by a lapse in insurance

---

[6] The Court acknowledges that the $200 liquidated damages award provided in the Prompt Pay Act would exceed the percentage calculation. However, the Court will not disturb Plaintiffs' election to seek this amount of liquidated damages.

11

coverage, even if that laps is attributable to the employer. Accordingly, the Court will not award the additional $700 damages.

The specific damages awards attributable to each of the fourteen Plaintiffs are set forth below.

| Name | Ohio minimum wage back pay | Ohio minimum wage liquidated damages | FLSA overtime back pay | FLSA overtime liquidated damages | Prompt Pay Act liquidated damages | Total |
|---|---|---|---|---|---|---|
| Eric Barnett | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |
| Bill Beal | $1,272.00 | $2,544.00 | $0 | | $76.32 | $3,892.32 |
| John Bussard | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |
| James Mikel Ellis | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Stephen Evans | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Keith Heard | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |
| Jose Medina | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |
| Angel Manuel Mendez Fret | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| David Morales Perez | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Marquice Simmons | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| Craig Smith | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Terry Thacker | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| John Vogel | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| Kevin Williams | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| | | | | | | $51,557.60 |

## V. ATTORNEY'S FEES AND COSTS

Plaintiffs seek to recover a total of $37,800.14 in attorney's fees and costs incurred in the prosecution of this action through February 5, 2015. (Doc. 26, Ex. P; Doc. 27). The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

12

costs of the action." 29 U.S.C. § 216(b). The Ohio Constitution and the Ohio Wage Act similarly provide that the court shall award reasonable attorney's fees and costs to a prevailing employee. Ohio Const. Art. II, § 34a; Ohio Rev. Code §§ 4111.10(A).

With regard to attorney fees, a "[p]laintiff bears the burden of proving that the requested fees and expenses are reasonable." *Citizens Against Pollution v. Ohio Power Co.*, 484 F.Supp.2d 800, 808 (S.D. Ohio 2007) (citing *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999)). "In determining what is reasonable, the general approach is to 'first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate'" and "[t]here is a 'strong presumption that the lodestar represents the reasonable fee.'" *Id*. (citing *City of Burlington v. Dague*, 505 U.S. 557 (1992)).

In determining the reasonableness of fees, the Court is cognizant that "[t]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Further, "an award of attorney fees here encourages the vindication of congressionally identified policies and rights." *Id.* at 1134-35.

Barkan Meizlish, LLP incurred $32,842.90 in fees and Elk & Elk incurred $4,404.00 in fees. (Doc. 26, Ex. P; Doc. 27). These fee requests are supported by itemized billing statements. (Doc. 26, Ex. P, Attachment 4; Doc. 27, Ex. 2). For Barkan Meizlish, the billing records reflect that a partner expended 55.04 hours at an hourly rate of $425, two associates expended a total of 28.22 hours at an hourly rate of $200, one paralegal expended 14.45 hours at an hourly rate of $105, and one law clerk expended

19.91 hours at an hourly rate of $115. (Doc. 26, Ex. P at ¶ 11). An attorney at Elk & Elk expended 18.45 hours at an hourly rate of $200 and a paralegal expended 6.80 hours at an hourly rate of $105. (Doc. 27 at ¶ 11).

The reasonableness of the hourly rate is supported by the affidavit of Attorney John Marshall. (Doc. 28). Attorney Marshall opines that hourly rates charged are within the fair and reasonable market value for services rendered in wage and hour litigation by attorneys with comparable qualifications in this market. (*Id.* at ¶ 6). The Court has reviewed the attached billing statements and finds that there is no evidence of duplicative, unnecessary, or overly prolonged work. Additionally, the Court finds that the documentation is "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2. (6th Cir. 1984). Accordingly, the lodestar is $37,246.90.

The lodestar amount may be adjusted upwards or downwards based on a twelve-factor test. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983). Plaintiffs have not requested an upward adjustment. Similarly, the Court does not identify any circumstances warranting a downward adjustment. Accordingly, the Court finds that the requested fee award of $37,246.90 is reasonable and that Plaintiffs are entitled to such an award.

Barkan Meizlish, LLP also seeks to recover $553.24 in costs and expenses, consisting of the $400 filing fee, $18.51 in postage, $34.73 for gas in traveling to

14

Cincinnati, and $100 to rent a room for a client meeting in Cincinnati. (Doc. 26, Ex. P, Attachment 4 at 3). The Court finds that these costs and expenses were reasonable and necessary to the litigation of this action. *Landsberg v. Acton Enter., Inc.*, No. 2:05-cv-500, 2008 WL 2468868, at *4 (S.D. Ohio June 16, 2008). Accordingly, the Court will allow recovery of $553.24 in costs.

Finally, Plaintiffs seek leave to file an additional application for an award of fees and costs incurred in executing and collecting the default judgment. The Court will permit Plaintiffs to file an additional fee application and will address the merits of such a request at that the appropriate time.

## VI. CONCLUSION

Wherefore, for these reasons, Plaintiffs' motion for collective action certification (Doc. 14) and motions for default judgment (Docs. 26, 32) are **GRANTED**. Plaintiffs are entitled to a total of **$51,557.60** in damages as allocated herein. Additionally, Plaintiffs are entitled to an award of $37,246.90 in attorney's fees and $553.24 in costs, totaling **$37,800.14**. Defendants E-Waste Systems, Inc. and E-Waste Systems Cincinnati, Inc. are jointly and severally liable for these amounts.

This is a Final Order, and the Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

The Clerk shall mail a copy of this Order and the Judgment to Defendants by certified mail.

**IT IS SO ORDERED.**

Date: 4/17/15　　　　　　　　　　　　　　　*s/ Timothy S. Black*
　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　United States District Judge